UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| CHRISTIAN MARIE BANLEY,<br><br>Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF SOCIAL SERVICES, CHILD PROTECTIVE SERVICES, Aberdeen, SD; official capacity; ETHAN BOHLE, Caseworker, individual and official capacity; ROCHELLE HEINMAN, Intake Caseworker, individual and official capacity; ASHLEY ZENS, Supervisor, individual and official capacity; KARLA NELSON, Brown County Deputy States Attorney, individual and official capacity; JUDGE TONY PORTRA, individual and official capacity; ABERDEEN POLICE DEPARTMENT, Police Officers, official capacity; CHILDREN'S HOME SOCIETY OF SOUTH DAKOTA, Residential Treatment Group Home, official capacity; CHRIS DOHRER, Attorney at Law for Christian, individual and official capacity; CHRISTY GRIFFIN-SERR, Attorney at Law, Guardian at litem for Joshua, individual and official capacity; and DANA HANNA, VIA THE ESTATE OF DANA HANNA; Attorney for the Cheyenne River Sioux Tribe, individual and official capacity,<br><br>Defendants. | 1:25-CV-01020-RAL<br><br>OPINION AND ORDER SCREENING COMPLAINT UNDER 28 U.S.C. § 1915A |

Plaintiff Christian Marie Banley[1] filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 while she was incarcerated at the Brown County Jail.[2] Doc. 1. Banley paid the full filing fee. Banley has alleged violations of the Indian Child Welfare Act (ICWA)[3] as well as her Fourth, Fifth, Eighth, and Fourteenth Amendments against the South Dakota Department of Social Services Child Protective Services Division in its official capacity; violations of ICWA and the Fourth and Fifth Amendments against Ethan Bohle in his individual and official capacity; violations of ICWA and the Fourth, Fifth, and Fourteenth Amendments against Rochelle Heinman in her individual and official capacity; violations of ICWA and the Fourth, Fifth, and Fourteenth Amendments against Ashley Zens in her individual and official capacity; violations of ICWA and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments against Karla Nelson in her individual and official capacity; violations of ICWA and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments against Fifth Judicial Circuit Court Judge Tony Portra in his individual and official capacity; violations of ICWA and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments against the Aberdeen Police Department in its official capacity; violations of ICWA and the Fourth, Fifth, and Fourteenth Amendments against the Children's Home Society of South Dakota in its official capacity; violations of ICWA and the Fifth, Sixth, Eighth, and Fourteenth

---

[1] In her initial complaint, Banley listed four total plaintiffs: herself, Pamela Banley, Thaddeus Banley, and Joshua Banley. Doc. 1 at 3. This Court informed Banley, however, that a pro se litigant cannot represent someone other than herself in federal court, and that if Banley wished to include multiple plaintiffs in her case, she must submit an amended complaint signed by each plaintiff pursuant to Federal Rule of Civil Procedure 11(a). Doc. 5 at 3–4. In a subsequent letter to the Court, Banley confirmed that she wished to proceed as the only plaintiff in the case. Doc. 6.

[2] Banley was subsequently transferred to the South Dakota Women's Prison. See Doc. 1-1 at 2; Doc. 6 at 2. Banley later filed a change of address informing the Court that she is no longer incarcerated. See Doc. 7 at 1.

[3] Banley lists "25 USC Chapter 21" for each of the ICWA violation allegations. See Doc. 1 at 8–9.

Amendments against Chris Dohrer in his individual and official capacity; violations of ICWA and the Fifth, Sixth, Eighth, and Fourteenth Amendments against Christy Griffin-Serr[4] in her individual and official capacity; and violations of ICWA against the estate of Dana Hanna[5] in his individual and official capacity. Id. at 8–9.

## I. 28 U.S.C. § 1915A Screening

### A. Screening Standard

Because Banley paid the full civil complaint filing fee, the screening provisions of 28 U.S.C. § 1915(e)(2)(B) are not applicable, and the Court must determine whether screening under 28 U.S.C. § 1915A is required. See Keith v. Summers, No. 4:24-CV-04077, 2025 WL 267049, at *1–2 (D.S.D. Jan. 21, 2025). "Section 1915A only permits a court to screen a prisoner's complaint if 'a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" Id. at *2 (quoting 28 U.S.C. § 1915A(a)). "A plaintiff's prisoner status is determined at the time when he [or she] filed the action." Id. at *1 (citing Williams v. Scalleta, 11 F. App'x 677, 678 (8th Cir. 2001) (per curiam)). Banley is a prisoner for purposes of § 1915A, as she filed her complaint while in custody. See Doc. 1 at 16–21; Doc. 1-1 at 2.

Banley names as defendants, among many others, the "Department of Social Services – Aberdeen, SD Child Protective Service" and the "Aberdeen Police Department" in their official capacities. Id. at 3, 5. Banley has therefore named governmental entities such that this Court must screen her claims under § 1915A. See Ehlers v. U.S. Navy, No. 16-CV-30, 2016 WL 1592478, at *2 (D. Minn. Mar. 14, 2016) (holding that even if some defendants are not government actors,

[4] Banley refers to this defendant both as "Christy Griffin-Serr[,]" Doc. 1 at 5, 9 and as "Christy Serr[,]" id. at 13. This Court will use "Griffin-Serr" as that is how Banley refers to this defendant most consistently.

[5] Banley provides inconsistent spellings of this defendant's name. Compare Doc. 1 at 5, with id. at 9. This Court will use the spelling Banley provided in the list of defendants, Hanna.

"[u]nder § 1915A(a), the screening requirement is triggered when a prisoner seeks redress from a governmental defendant" and "[s]ection 1915A(b) is clear that, once this screening requirement is triggered under § 1915A(a), the court's review must encompass the entire complaint, including any portions of the complaint that would not have been subject to screening if not filed alongside the claims that triggered screening"), report and recommendation adopted by 2016 WL 1559136, at *1 (D. Minn. Apr. 18, 2016); Pratt v. United States Dep't of Just. Selective Serv. Act Entitled, No. 4:25-CV-04077, 2026 WL 483188, at *1 (D.S.D. Feb. 20, 2026).

**B. Background as Alleged by Banley**

Banley's complaint centers around issues she has encountered regarding custody of her children, L.B. and J.J.,[6] the placement of her children under ICWA, and other actions taken by various individuals and entities, including the Department of Social Services Child Protective Services Division (DSS), the Aberdeen Police Department, and the Children's Home Society of South Dakota (CHS). Doc. 1. On April 21, 2021, DSS seized L.B. and J.J. from Banley's home. Id. at 9. The same day, DSS gave Banley a urinary analysis (UA) test, presumably to test for substance use, which Banley alleged came back clean from the state lab, yet the children were not returned to Banley's custody. Id. Banley alleges that DSS lied to her when it represented that it had custody of the children and that she could not access her children without DSS's permission, even though DSS did not gain custody of the two children until July 2021. Id. at 9–10.

At some point, it appears that the children's grandparents, Pamela and Thaddeus Banley (Pamela and Thad) gained custody of the children. Id. at 10. In October 2021, Pamela suffered a stroke and the children were taken into foster care. Id. After Pamela recovered from her stroke, DSS did not allow her to regain custody of the children despite the training Pamela and Thad went

---

[6] This Court uses the minor children's initials to protect their identities.

through to become certified as foster parents in order to adopt Banley's children. See id.

At an unspecified time, Banley spoke with DSS caseworker Rochelle Heinman "under the false information that she had custody of the girls when in fact [she] did not have custody of them." Id. Banley alleges that Heinman used this lie to convince Banley to work with her, but information Banley shared with Heinman later was used to build a case against Banley. Id. Banley alleges that Heinman failed to advise Banley that she should consult with a lawyer before speaking with DSS and its caseworkers. Id. After two months, Heinman used information from Banley's past for DSS to gain custody of the children. Id. Banley claims that DSS lied in court and on documentation, which Pamela, Thad, and Banley disputed, but "nobody would investigate the said allegation by DSS." Id.

At an unspecified point, Banley faced abuse and neglect criminal charges, but these charges were ultimately dismissed. Id. DSS recommended to the state court that Banley's parental rights be terminated. Id. DSS did not permit Pamela and Thad to adopt L.B. and J.J. Id. Banley alleges that while in DSS custody, her children have been prescribed medications, which Banley does not think are necessary, and that they have poor mental health. Id. Banley alleges that DSS violated ICWA in their removal of L.B. and J.J. from Banley's custody, specifically by not having a 48-hour hearing, not returning jurisdiction of the custody case to tribal courts, not trying reunification, and not making efforts to keep L.B. and J.J. with a Native American family. Id.

Banley alleges that Ethan Bohle, a DSS caseworker, helped DSS obtain and keep custody of the children by lying in court documents and "never being investigated" from April 2021 until July 2023. Id. at 10–11. Banley claims that Bohle misrepresented information that Banley or Pamela told him, refused to talk to Pamela, was rude to Pamela, took advantage of the fact Pamela's "mentality was slower" following her stroke, and made up information, including

reporting information from Pamela about Banley being in a psychological ward that Pamela never told him. Id. at 11. Banley alleges that Bohle violated "ICWA by not actually trying to reunify the family." Id.

Banley alleges that Ashley Zens, a DSS supervisor, allowed her case workers to lie and ignore federal law, did not check whether the caseworkers' claims and allegations were true, and ignored the fact that the children were wards of the tribal court and did not transfer custody of the case to "the correct jurisdiction." Id. Banley further alleges that Zens violated ICWA by not requiring caseworkers to attempt reunification efforts and approving caseworkers' suggestions for removal that did not comply with ICWA. Id.

Banley claims that Karla Nelson, a Brown County State's Attorney, unconstitutionally utilized things that Banley, Pamela, Thad, and Joshua Banley (Joshua)[7] had said against them in the abuse and neglect case. Id. ("Example: [Banley] made it known she was choosing adoption for a pregnancy that started before the CPS case started. Karla then publicly, in court mocked [Banley] for choosing adoption for the unborn baby."). Banley alleges that Nelson did not allow her to consult with her lawyer about the accusations against her, and that Nelson knew that the attorneys representing her and Joshua were not representing them correctly. Id. at 12. Banley further alleges that Nelson conducted investigative work herself, including fabricating evidence. Id. at 8. Nelson encouraged the court to keep the children from Banley "when there was no present danger situation" and the criminal charges had been dismissed. Id. at 11–12. Banley alleges that Nelson improperly called police officer witnesses to testify about Banley's criminal matters. Id. at 12. Banley further alleges that Nelson did not acknowledge that the Cheyenne River Sioux

[7] The complaint leaves unclear Joshua's relationship to Banley, though he possibly is Banley's adult son.

Tribe had exclusive jurisdiction, continued to place the children in state care rather than with Native American family members, did not initiate a 48-hour hearing, did not inform the tribe of the children's case, did not ensure DSS met ICWA requirements, and lied on behalf of the state. Id.

Banley alleges that Judge Tony Portra, a circuit court judge for the Fifth Judicial Circuit of South Dakota, committed a variety of violations of her constitutional and statutory rights from April 2021 to June 2023, including using things from Banley's past against her, allowing for the seizure of L.B. and J.J. without jurisdiction or evidence, never allowing the children to speak with their parents, failing to follow due process under ICWA, allowing Banley's court-appointed counsel allegedly to work for the state's best interest, and terminating the parental rights of Banley and the children's father. Id. Banley also mentions allegations related to Cy and Elijah, who may be the children's fathers, although it is unclear to this Court. Id.

Banley alleges that the Aberdeen Police Department twisted Banley's words to charge her with a charge "that did not fit." Id. at 13. Banley claims that the Aberdeen Police Department had a detective "known to have prior issues with" Banley give Banley a UA and that this UA came back "incorrect[.]" Id. She alleges that the Aberdeen Police Department then used that UA to remove Banley's children and had Banley go to jail, rather than letting her stay with her children until her parents arrived. Id. Banley further alleges that the Aberdeen Police Department did not follow its own procedures when testifying against Banley, by using an open criminal case against her during her termination hearing and by slandering her at her termination hearing. Id.

Banley alleges that CHS kept the children from Banley at the direction of the state while knowing that the children should have been protected by ICWA and been with their family members. Id. at 13. Banley further alleges that CHS used the things she told them against her,

unnecessarily medicated her children, overlooked the emotional and mental damage DSS caused her children, and did not suggest that Banley's children be reunited with her family despite the lack of evidence that the children were being neglected or abused. Id.

Banley alleges that Chris Dohrer, her previous attorney, did not represent her effectively between April 2021 and June 2023. Id. Banley claims that Dohrer did not prepare her case or assist properly with the appeal process and sided with the state. Id. Banley also alleges that Dohrer did not insist the case be transferred to the tribal court. Id.

Banley also alleges that Christy Griffin-Serr did not follow due process by meeting with the children, providing no counsel to the children, siding with the state, and causing the children to lose their families. Id. at 13–14. Banley also alleges Griffin-Serr did not insist the case be transferred to the tribal court. Id.

Banley alleges that Dana Hanna used his position as the attorney for the Cheyenne River Sioux Tribe to deprive Banley, Pamela, Thad, and Joshua of their statutory rights under ICWA as "he knew that the children in this case were 'wards of the Tribal Court' he represented, . . . chose to ignore jurisdiction placement for these children[,] . . . [and] then directed the Cheyenne River Sioux Tribe's ICWA Director, Ms. Diane Garreau, to do the same." Id. at 5, 9. Banley names Hanna's estate as Hanna died in 2023.

Due to these violations, Banley alleges that she suffered a miscarriage due to stress in 2022 and retaliatory incarceration by the state. Id. at 14. She further alleges additional injuries on behalf of Pamela, Thad, Joshua, L.B., and J.J. Id. Banley seeks injunctive relief, including an order vacating Judge Portra's order, sending the case to the Cheyenne River Sioux Tribal Court, releasing the children from DSS custody, and placing the children with their grandparents, as well as monetary relief to compensate Banley and members of her family for their injuries. Id.

### C. Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the Court must screen complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[ ] to state a claim upon which relief may be granted; or (2) seek[ ] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Banley's claims under 28 U.S.C. § 1915A.

## D. Analysis

### 1. Claims Asserted on Behalf of Pamela and Thaddeus Banley, Joshua Banley, and L.B. and J.J.

Preliminarily, this Court notes that Banley has alleged constitutional and statutory rights violations on behalf of herself, Pamela, Thad, Joshua, and her children, L.B. and J.J. See generally Doc. 1. But Banley is a pro se plaintiff, and she is the only one to have signed the complaint. Doc. 1 at 7 (signing "for all Banleys"). "Under Rule 11(a) of the Federal Rules of Civil Procedure, each pro se party in the case must sign the complaint in order to properly bring this action before the Court." Monroe v. Yankton Sioux Hous. Auth., No. 4:25-CV-04113, 2025 WL 1795824, at *2 (D.S.D. June 30, 2025) (quoting Clay v. Purkett, No. 06-CV-1859, 2007 WL 107758, at *1 (E.D. Mo. Jan. 9, 2007)); see also Ortiz-Diaz v. Social Sec., No. 17-CV-7532, 2018 WL 791256, at *2 (E.D.N.Y. Feb. 7, 2018) (citing Rule 11(a) for the proposition that "[a]ll pro se plaintiffs in a lawsuit must sign the complaint"). Further, while a pro se plaintiff may plead their own case in federal court under 28 U.S.C. § 1654, a pro se plaintiff cannot bring claims on behalf of others. See Jones ex rel. Jones v. Corr. Med. Servs., Inc., 401 F.3d 950, 952 (8th Cir. 2005) (holding that non-lawyers cannot represent the interests of another person); Lone Eagle v. S.D. Bd. of Mins. & Env't, No. 5:26-CV-05068, 2026 WL 1430524 (D.S.D. May 21, 2026), reconsideration denied, No. 5:26-CV-05068, 2026 WL 1482239 (D.S.D. May 27, 2026).

Banley has alleged the following claims on behalf of others: (1) that DSS violated Pamela, Thad, and Joshua's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments and ICWA, and L.B. and J.J.'s Eighth Amendment rights; (2) that Bohle violated Pamela, Thad, and Joshua's rights under the Fourth and Fifth Amendments and ICWA; (3) that Heinman violated Pamela, Thad, and Joshua's rights under the Fourth, Fifth, and Fourteenth Amendments and ICWA; (4) that Zens violated Pamela, Thad, and Joshua's rights under the Fourth, Fifth, and Fourteenth

Amendments and ICWA; (5) that Nelson violated Pamela, Thad, and Joshua's rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and ICWA; (6) that Judge Portra violated Pamela, Thad, and Joshua's rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and ICWA; (7) that the Aberdeen Police Department violated Pamela, Thad, and Joshua's rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and ICWA; (8) that CHS violated Pamela, Thad, and Joshua's rights under the Fourth, Fifth, and Fourteenth Amendments and ICWA, and L.B. and J.J.'s Eighth Amendment rights; (9) that Dohrer violated Pamela, Thad, and Joshua's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments and ICWA; (10) that Griffin-Serr violated Pamela, Thad, and Joshua, L.B., and J.J.'s rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments and ICWA; and (11) that Hanna violated Pamela, Thad, and Joshua's rights under ICWA. Doc. 1 at 8–14. Because Banley cannot assert claims on behalf of her children, her parents, or Joshua, these claims, as well as any other claims Banley intended to assert on behalf of others, are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2. ICWA Claims

Banley alleges that DSS, Bohle, Heinman, Zens, Nelson, Portra, the Aberdeen Police Department, CHS, Dohrer, Griffin-Serr, and the Estate of Dana Hanna all violated ICWA based on their failures to follow ICWA requirements such as making attempts to reunify family, not following proper notice requirements, and failing to transfer the case involving Banley's children to tribal court. Doc. 1 at 8–14.

Under ICWA,

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that

such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C. § 1914. See also Jumping Eagle v. Warren, No. 18-CV-4131-LLP, 2021 WL 462644, at *7 (D.S.D. Feb. 9, 2021) (holding that federal courts are courts of competent jurisdiction for claims under § 1914). An "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4). Here, Banley does not specifically allege that her children meet the definition of an Indian child for purposes of 28 U.S.C. § 1903(4). See Doc. 1. But Banley does allege that L.B. and J.J. are "wards of the Tribal Court[.]" Doc. 1 at 9, 10, 11, 12, 13. Liberally construing her complaint and taking as true the allegations in Banley's complaint, as this Court must at this stage of the proceedings, this Court assumes that L.B. and J.J. each qualify as an "Indian child" for purposes of ICWA.

**a. Claims for Monetary Relief**

As an initial matter, Banley requests money damages under ICWA. Doc. 1 at 14. But "ICWA does not provide for a cause of action for money damages. The only relief that can be provided is declaratory relief under the Act." Fletcher v. Florida, 858 F. Supp. 169, 173 (M.D. Fla. 1994); see also McClure v. Dohmen, 2009 WL 801586, at *2 (D. Neb. Mar. 24, 2009) ("Plaintiff seeks damages, but such relief is not available under the Indian Child Welfare Act."); Jackson v. Hennepin Cnty. Dep't of Hum. Res. & Pub. Health, No. 1:22-CV-00036-VMC, 2023 WL 3019013, at *1 n.6 (N.D. Ga. Jan. 19, 2023) ("ICWA does not create a private right of action for money damages."). Thus, Banley's ICWA claims for money damages are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

**b. Claims for Declaratory Relief**

ICWA permits a parent or Indian custodian[8] who loses custody of an Indian child through termination of parental rights under state law to "petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914. Some courts have held this language grants federal courts the authority to invalidate a state-court order for foster care placement or termination of parental rights if it is in violation of §§ 1911, 1912 or 1913. E.g., Doe v. Mann, 415 F.3d 1038, 1044–48 (9th Cir. 2005). Even if this Court has jurisdiction to invalidate the state-court orders pursuant to §1914, however, federal courts are generally to abstain from interfering with ongoing state-court proceedings under Younger v. Harris, 401 U.S. 37 (1971). In Oglala Sioux Tribe v. Fleming, 904 F.3d 603 (8th Cir. 2018), the United States Court of Appeals for the Eighth Circuit held South Dakota's custody proceedings are civil enforcement proceedings to which Younger abstention applies. Id. at 610. From the face of Banley's complaint, it does not appear that the state-court proceedings she refers to are ongoing.[9] Doc. 1.

Here, Banley does not identify which ICWA provisions she brings claims under, see generally id., but only provides general references to ICWA and 25 USC Chapter 21, see, e.g., id. at 8–9. As stated above, § 1914 provides a remedy for violations of §§ 1911, 1912, and 1913. Jumping Eagle, 2021 WL 462644, at *5–6. Liberally construing her complaint, Banley alleges

---

[8] "Indian child" and "Indian custodian" are terms in 25 U.S.C. § 1914 itself. While "American Indian," "Native American," or "tribal member" probably are more apt terms in today's parlance, federal law commonly and historically refers to those descended from or affiliated with the 575 federally recognized American Indian tribes as "Indians." See Tribal Leaders Directory, U.S. Dep't of the Interior Indian Affs., https://www.bia.gov/service/tribal-leaders-directory (last visited Sep. 15, 2026) (recognizing that, as of January 30, 2026, there are 575 federally recognized tribes).

[9] It appears that these proceedings concluded in 2023 when Judge Portra terminated Banley's parental rights. See Doc. 9 at 2.

violations of 25 U.S.C. §§ 1911(a), 1912(a), (d), and (e).[10] Doc. 1. Under 25 U.S.C. § 1911(a),

> An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

25 U.S.C. § 1911(a). Here, Banley alleges that her children were wards of the tribal court, but that DSS, Heinman, Zens, Nelson, Dohrer, Griffin-Serr, Portra, and Hanna violated ICWA by failing to transfer jurisdiction to the tribal court. See Doc. 1 at 10, 11, 12, 13, 14. At this stage of the proceedings, these allegations are sufficient to state a plausible violation under § 1911(a) of ICWA.

This Court also liberally construes Banley's complaint to allege a claim under 25 U.S.C. § 1912(d), which provides that

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

25 U.S.C. § 1912(d). Here, Banley alleges that proper reunification efforts were not made both before her children were placed in foster care and before her parental rights were terminated. See Doc. 1 at 10, 11. Banley alleges that DSS, Bohle, and Zens failed to make these efforts. Id. At this stage of the proceedings, these allegations are sufficient to state a plausible violation under § 1912(d) of ICWA.

Lastly, Sections 1912(e) and (f) concern foster care placement orders and parental rights termination orders. 25 U.S.C. § 1912(e), (f). Under each subsection, those orders require a determination that the continued custody of the child by the Indian custodian is "likely to result in

---

[10] Section 1913 concerns voluntary termination of parental rights, and Banley has not alleged any facts related to this section. See generally Doc. 1; see also 25 U.S.C. § 1913.

serious emotional or physical damage to the child." Id. Here, it appears that both sections apply, because Banley appears to allege that the requirements were not met both when her children were placed in foster care and when her parental rights were terminated. See Doc. 1 at 10, 12. Banley alleges that "[t]here was no sufficient evidence to support the idea that [her children] were in grave danger if to be returned to Mom[,]" and that the children were placed in foster care despite Pam and Thad going through "extensive training through [Lutheran Social Services] to become State certified foster parents[.]" Id. At the screening stage, these allegations are sufficient to state a plausible violation under §§ 1912(e) and (f) of ICWA against DSS and Judge Portra.

At this stage of the proceedings, Banley has alleged plausible violations of 25 U.S.C. §§ 1911(a), 1912(d), 1912(e), 1912(f) for declaratory relief.[11] "[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Here, because monetary damages are not available under ICWA and the children are in custody of the state, Banley has not stated an ICWA claim against Nelson, Dohrer, Griffin-Serr, or Hanna for purposes of any declaration of rights and duties under ICWA. Therefore,

[11] Banley also alleges that DSS and Nelson violated ICWA because Banley did not receive a 48-hour hearing "as required by ICWA law." Doc. 1 at 10, 12. But as this Court understands Banley's complaint, she is likely referring to the provisions of SDCL Chapter 26-7A, provisions of South Dakota law providing "a process for the removal of children from their home in exigent circumstances." Oglala Sioux Tribe v. Fleming, 904 F.3d 603, 607 (8th Cir. 2018) (citing SDCL § 26-7A-1 *et seq.*). According to SDCL § 26-7A-14, "No child may be held in temporary custody longer than forty-eight hours . . . excluding Saturdays, Sundays, and court holidays, unless a temporary custody petition for an apparent abuse or neglect case or other petition has been filed, the child is within the jurisdiction of the court and the court orders longer custody during a noticed hearing or a telephonic hearing." SDCL § 26-7A-14. "South Dakota circuit courts have original jurisdiction over these proceedings." Fleming, 905 F.3d at 607 (citing SDCL § 26-7A-2).

Banley's ICWA claims against Nelson,[12] Dohrer, Griffin-Serr, and Hanna are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).[13] See Black Bear v. Lingren, No. 5:23-CV-05049-RAL, 2024 WL 1299079, at *8 (D.S.D. Mar. 27, 2024) (providing that plaintiff did not state an ICWA claim against private attorneys and a deputy state's attorney for purposes of declaratory relief under ICWA and dismissing ICWA claims against them on screening). Banley's ICWA claims against DSS, Heinman, Zens, Bohle, and Portra, however, survive § 1915A screening "because, as employees of the State sued in their official capacities involved with the removal of the children from [Banley's] custody, they are interested parties." Id. Therefore, her ICWA claims for declaratory relief against DSS under 25 U.S.C. §§ 1911(a), 1912(d), 1912(e), 1912(f), and 1914; against Bohle under §§ 1912(d) and 1914; against Heinman under §§ 1911(a) and 1914; against

---

[12] Banley alleges that Nelson "did not inform the tribe of the presence of Native American children by certified mail[,]" Doc. 1 at 12, which this Court liberally construes as a claim under 25 U.S.C. § 1912(a). This section of ICWA provides that

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.

25 U.S.C. § 1912(a). But Banley only alleges that Nelson failed to provide notice under this statute, and does not allege that any other defendant violated this statute. See generally Doc. 1. Because Banley has not stated an ICWA claim against Nelson for purposes of a declaration of rights and duties under ICWA, her claim under § 1912(a) is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

[13] In the section of her complaint outlining the basis for the Court's jurisdiction, Banley alleges that the Aberdeen Police Department and CHS violated ICWA. Doc. 1 at 9. But in the section of her complaint describing her claims, Banley does not describe how these defendants violated ICWA. Id. at 13. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,]" and a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation modified). Therefore, any ICWA claims Banley intended to allege against the Aberdeen Police Department and CHS are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

Zens under §§ 1911(a), 1912(d), and 1914; and against Portra under §§ 1911(a), 1912(e), 1912(f), and 1914 survive initial screening under 28 U.S.C. § 1915A, though Younger abstention or the Rooker-Feldman doctrine may ultimately apply.[14]

### 3. § 1983 Claims

#### a. Claims Against DSS

Banley alleges that DSS violated her Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Doc. 1 at 8–10. The Supreme Court of the United States has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court. Will v. Mich. Dep't. of State Police, 491 U.S. 58, 65–66 (1989) (citations omitted). "Eleventh Amendment immunity extends to states and arms of the state[.]" Thomas v. St. Louis Bd. of Police Comm'rs, 447 F.3d 1082, 1084 (8th Cir. 2006) (internal quotation omitted). The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the Court examines the powers and characteristics of the entity created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (citing Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982)).

---

[14] "The Rooker-Feldman doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." Kvalvog v. Park Christian Sch., Inc., 66 F.4th 1147, 1152 (8th Cir. 2023) (citation omitted). "The doctrine applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Id. (citation omitted). For purposes of screening, this Court declines to apply the Rooker-Feldman doctrine to Banley's ICWA claims. See Black Bear, 2024 WL 1299079, at *9 n.14 (declining to apply the Rooker-Feldman doctrine at the screening stage because the Court "is unaware of any Eighth Circuit authority applying Rooker-Feldman to ICWA cases[]").

Banley names the South Dakota Department of Social Services Child Protective Services as a defendant. Doc. 1 at 3. The South Dakota Department of Social Services was created by the state legislature, see SDCL § 1-36-1, and Child Protective Services is a division of the Department of Social Services, see Hunter v. S.D. Dep't of Soc. Servs., 377 F. Supp. 3d 964, 972 (D.S.D. 2019). Therefore, DSS is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983. See Cory, 457 U.S. at 90–91. Banley's claims against DSS, a state entity, are barred by the Eleventh Amendment and dismissed under 28 U.S.C. § 1915A(b)(1)–(2).

**b. Claims Against CHS**

Banley brings claims against CHS, alleging violations of her Fourth, Fifth, and Fourteenth Amendment rights. Doc. 1 at 9. CHS is a "nonprofit social services organization[.]" Children's Home Society Our History, Childs. Home Soc'y of S.D., https://chssd.org/about/history (last visited Sep. 2, 2026). Therefore, the Court must consider whether CHS is amenable to suit under § 1983.

Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "Although § 1983 secures most constitutional rights from infringement by governments, not private parties, where a private party acts under color of state law, it can be held liable under § 1983." Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975 (8th Cir. 1993) (internal citation omitted). When determining whether a private entity has acted under color of state law, "[t]he issue is whether the alleged infringement of federal rights is fairly attributable to the State." Am. United for Separation of Church & State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 422 (8th Cir. 2007) (citation modified). According to the Eighth Circuit,

> The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a state actor, such as where the state has delegated to

> a private party a power "traditionally exclusively reserved to the State," where a private actor is a "willful participant in joint activity with the State or its agents," and where there is "pervasive entwinement" between the private entity and the state[.]

Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007) (internal citations omitted). But "[t]he one unyielding requirement is that there be a 'close nexus' not merely between the state and the private party, but between the state and the alleged deprivation itself." Id. (citing Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001).

Banley alleges that CHS "acted under color of state law by using [its] position as a state funded group home for children to deprive the plaintiffs of their Fourth, Fifth and Fourteenth amendment rights." Doc. 1 at 9. But the fact that a private entity receives funding from the state does not automatically mean that a private entity can be characterized as acting under color of state law. See Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982) (a private entity was not a state actor even though "virtually all of the [private entity's] income was derived from government funding"); Hornbeck v. Archdiocese of St. Louis, No. 4:23 CV 245 CDP, 2023 WL 4998855, at *2 (E.D. Mo. Aug. 4, 2023) (providing that "mere receipt of funds does not make defendants state actors capable of being sued under § 1983[]"). Banley also alleges that CHS has been "illegally keeping the girls from their mother at direction of the state[.]" Doc. 1 at 13. But again, "[m]erely because [private, non-profit corporations] are extensively regulated by the state and receive state funding does not mean that they willfully participate in joint activity with the state." Calgaro v. St. Louis Cnty., No. 16-CV-3919 (PAM/LIB), 2017 WL 2269500, at *3 (D. Minn. May 23, 2017). And although Banley alleges that CHS was acting "at [the] direction of the state," Doc. 1 at 13, she provides no facts that the state delegated power to CHS that is "traditionally exclusively reserved to the State[.]" Wickersham, 481 F.3d at 598. See also Doe v. North Homes, Inc., 11 F.4th 633, 638 (8th Cir. 2021) (observing that "a foster home was not a state actor in part because it 'has no power

to remove children and place them . . . in juvenile correctional facilities—the kinds of things state actors traditionally may do'" (alteration in original) (quoting Howell v. Father Maloney's Boys' Haven, Inc., 976 F.3d 750, 753 (6th Cir. 2020))).

Banley's conclusory allegations do not state a claim that CHS was a participant in joint action with the state, or that there existed such a close nexus between the state and CHS that CHS's action could be fairly attributed to the state. Therefore, Banley's § 1983 claims against CHS are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

**c. Claims Against Chris Dohrer**

Banley brings claims against her court-appointed attorney, Chris Dohrer, for violations of her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Doc. 1 at 9. Banley claims that Dohrer "acted under color of state law by using his position as a court appointed attorney for the State of South Dakota[.]" Id. But Banley's claims against Dohrer "are subject to dismissal because private lawyers, whether appointed or retained, generally do not qualify as state actors." Gomez v. Elk Point Union Cnty., 4:24-CV-04216-LLP, 2025 WL 775832, at *8 (D.S.D. Mar. 11, 2025) (citing Myers v. Vogal, 960 F.2d 750, 750 (8th Cir. 1992) (per curiam)); Polk County v. Dodson, 454 U.S. 312, 325 (1981) (public defender does not act under color of state law when performing traditional functions as counsel)). "Although a valid conspiracy charge could support an allegation that a private attorney acted under color of state law, [] vague allegations do not provide plausible grounds to infer that there was a meeting of the minds between [a private attorney] and the state actors to violate [a plaintiff's] constitutional rights." Gomez, 2025 WL 775832, at *8 (citing Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993) ("[A] plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or

a meeting of the minds, between the private party and the state actor.")). Banley has not set forth sufficient allegations to infer a meeting of the minds between Dohrer and other state actors to violate her constitutional rights. See generally Doc. 1. Accordingly, Banley's § 1983 claims against Dohrer are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

#### d. Claims Against Aberdeen Police Department

Banley brings claims against the Aberdeen Police Department arising under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Doc. 1 at 9, 13. But "it is well settled that municipal police departments, sheriff's offices, and jails are not generally considered persons within the meaning of 42 U.S.C. § 1983 and thus not amenable to suit." Alvarez v. N. Platte Police Dep't, No. 8:22CV354, 2023 WL 4865828, at *2 (D. Neb. July 31, 2023) (quoting Ferrell v. Williams Cty. Sheriff's Office, No. 4:14-CV-131, 2014 WL 6453601, at *2 (D.N.D. Nov. 4, 2014)); see also Infante v. Wagner Holding Trust, 3:25-CV-03019-ECS, 2025 WL 2650145, at *4 (D.S.D. Sep. 16, 2025) (stating that a police department "is not a juridical entity[]" and "[a]s such, it is not amenable to suit." (citations modified)). Therefore, Banley's claims against the Aberdeen Police Department are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).[15]

---

[15] It is not clear whether Banley intended to name individual police officers employed by the Aberdeen Police Department as defendants. See Doc. 1 at 9, 13. To the extent that Banley intended to bring claims against individual officers, these claims are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone, 364 F.3d at 914. Here, Banley does not specify the conduct of any individual officer that caused her cognizable harm under § 1983, and "[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." Tatone v. SunTrust Mortg., Inc., 857 F. Supp. 2d 821, 831 (D. Minn. 2012).

**e. Claims Against DSS Employees**

**i. Official Capacity Claims for Monetary Relief and Individual Capacity Claims for Injunctive Relief**

Banley brings claims against Bohle, Heinman, and Zens in their official capacities for monetary relief. Doc. 1 at 4, 14. Because they are employed by South Dakota DSS, Bohle, Heinman, and Zens all employees of the State of South Dakota. Doc. 1 at 4. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, Banley's official capacity claims against Bohle, Heinman, and Zens are construed as claims against the State of South Dakota. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. The State of South Dakota has not waived its sovereign immunity. Thus, Banley's claims against Bohle, Heinman, and Zens in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915A(b)(2).

Banley also sues Bohle, Heinman, and Zens in their individual capacities for injunctive relief. Doc. 1 at 4, 14. But "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd., 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity."). Therefore, Banley's requests for injunctive

relief against Bohle, Heinman, and Zens in their individual capacities are dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915A(b)(1).

**ii. Official Capacity Claims for Injunctive Relief and Individual Capacity Claims for Monetary Relief**

Banley also sues Bohle, Heinman, and Zens in their official capacities for injunctive relief and their individual capacities for monetary relief. Doc. 1 at 4, 14. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Banley's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

A plaintiff's "official capacity claim for injunctive relief need only allege that each defendant, by virtue of his [or her] office, has some connection with the unconstitutional conduct for which [the plaintiff] seeks injunctive relief." Warfield v. Hettich, No. 4:24-CV-04049-ECS, 2025 WL 957769, at *9 (D.S.D. Mar. 31, 2025) (internal quotation omitted) (citing Ex parte Young, 209 U.S. 123, 157 (1908)). Here, Banley requests that her children be "immediately released from the custody of the SD-DSS where they've been held in, and placed with their grandparents who have undergone extensive foster care training and have spotless criminal records." Doc. 1 at 14. Therefore, Banley has properly alleged claims seeking injunctive relief,

as long as she alleges that her injuries are "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Warfield, 2025 WL 957769, at *9 (citing Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 816 (8th Cir. 2008)).

### I. Fourteenth Amendment Substantive Due Process Claims

Banley alleges a Fourth Amendment claim against Bohle, Heinman, and Zens related to Banley losing custody of her children. See Doc. 1 at 10–11 (alleging that her Fourth Amendment rights were violated because her children were "illegally seize[d]"). But Banley does not allege "a violation of [her] *own* Fourth Amendment rights—*e.g.*, that [she] too [was] unlawfully seized or [her] home was unlawfully searched." Welter v. Wilson, 153 F.4th 652, 654 (8th Cir. 2025) (footnote omitted); see also Black Bear, 2024 WL 1299079, at *12 (dismissing plaintiff's claim that her Fourth Amendment rights were violated when her grandchildren were seized because "Fourth Amendment rights are personal rights, which, like some other rights, may not be vicariously asserted.") (citation omitted)). Instead, Banley's claims that her children were removed from her custody are more appropriately evaluated under the Fourteenth Amendment in light of parents' "Fourteenth Amendment interest in 'the care, custody, and management of their children.'" Welter, 153 F.4th at 654 (citing Mitchell v. Dakota Cnty. Soc. Servs., 959 F.3d 887, 897 (8th Cir. 2020)). Therefore, Banley's Fourth Amendment claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1), and this Court instead evaluates her claims under the Fourteenth Amendment.

"To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience." Mitchell, 959 F.3d at 898 (citing Folkerts v. City of Waverly, 707 F.3d 975, 980 (8th Cir. 2013)). The Supreme Court "has long recognized that freedom of personal choice in matters

of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." Moore v. E. Cleveland, 431 U.S. 494, 499 (1977) (quoting Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 639–40 (1974)). And the Eighth Circuit has made clear that "[p]arents have a liberty interest in the care, custody, and management of their children, but this interest is limited by the state's compelling interest in protecting a child[.]" Stanley v. Hutchinson, 12 F.4th 834, 840 (8th Cir. 2021) (citation modified).

As for what constitutes conscience-shocking behavior, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Folkerts, 707 F.3d at 980 (quotation omitted). "Manufacturing false evidence may be sufficient to shock the conscience and violate a plaintiff's due process rights. A false evidence claim requires proof that the investigators deliberately fabricated evidence to frame the defendant." Mitchell, 959 at 899 (8th Cir. 2020) (internal citations omitted).

Here, Banley claims that Bohle violated her rights because "he helped DSS obtain and keep custody of the girls from [Banley] by lying in court documents and never being investigated." Doc. 1 at 10–11. Banley alleges that Heinman violated her rights when "she helped DSS illegally seize [L.B and J.J.] by convincing Christian that she had custody of the girls when she didn't." Id. at 11. While Banley provides that at one point there were criminal charges against her for abuse and neglect, she states that these charges were dismissed, and that there was a "lack of evidence of any abuse or neglect[.]" Id. at 10. Accepting as true the allegations contained in the complaint, Banley has established a plausible violation of her Fourteenth Amendment rights, and her substantive due process claim against Bohle and Heinman, in their individual capacities for monetary damages and official capacities for injunctive relief, survives § 1915A screening.

Banley also alleges that Zens violated her rights "by allowing any case worker below her to lie and ignore federal law pertaining to" Banley's children, and by "not fact checking anything that was coming to her desk in regards to [Banley's children's] case." Id. at 11. First, Banley's allegation that Zens violated her Fourteenth Amendment rights by failing to double check information coming to her desk does not rise to the level of conscience-shocking. See Folkerts, 707 F.3d at 980 (providing that "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience[,]" and "[m]ere negligence is never sufficient[]" (quotations omitted)); Braun v. Burke, 983 F.3d 999, 1002 (8th Cir. 2020) (recognizing that "[n]eglience is never enough[]" to meet the level of culpability to show that conduct was conscience-shocking (citation omitted)). But Banley's claim that Zens violated her rights "by allowing any case worker below her to lie and ignore federal law pertaining to" Banley's children alleges a plausible Fourteenth Amendment violation. Doc. 1 at 11.

It does not appear from Banley's complaint that Zens herself lied or made false statements, and this Court therefore evaluates her claims against Zens based on a failure to train or supervise. See generally id. When a supervisor's liability is premised on the supervisor's failure to train or supervise, as opposed to direct participation, the plaintiff must show that the supervisor "(1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." Davis v. Buchanan Cnty., 11 F.4th 604, 624 (8th Cir. 2021) (quoting S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015)). "Allegations of generalized notice are insufficient[,]" Krigbaum, 808 F.3d at 340, and a supervisor's "mere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983[,]" Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994) (citation omitted). Here, Banley

alleges that Zens "allow[ed]" caseworkers to lie. Doc. 1 at 11. While this may constitute mere negligence, this Court is unable to determine at this time that Banley's substantive due process claim against Zens is wholly without merit. Therefore, Banley's Fourteenth Amendment claim against Zens, in her individual capacity for monetary damages and official capacity for injunctive relief, survives § 1915A screening.

### II. Fourteenth Amendment Procedural Due Process Claim

Banley alleges that Heinman violated her Fourteenth Amendment rights because "she did not follow ICWA, nor reach out to ICWA according to Federal Law, nor ensuring that the girls, who were 'wards of the Tribal Court' prior to this case, were sent to the correct jurisdiction[,]" which this Court liberally construes as a Fourteenth Amendment procedural due process claim. Doc. 1 at 11.

"To set forth a procedural due process violation, a plaintiff, first, must establish that [her] protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived [her] of such an interest without due process of law." Schmidt v. Des Moines Pub. Schs., 655 F.3d 811, 817 (8th Cir. 2011) (quoting Gordon v. Hansen, 168 F.3d 1109, 1114 (8th Cir. 1999)). As discussed above, "parents have a liberty interest in the 'care, custody, and management of their children.'" Swipies v. Kofka, 419 F.3d 709, 713–14 (8th Cir. 2005) (quoting Manzano v. South Dakota Dep't of Soc. Servs., 60 F.3d 505, 509–10 (8th Cir. 1995)). "Once a liberty interest is established, the next question is what process is due." Smith v. McKinney, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting Williams v. Norris, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation omitted).

Here, Banley has not provided enough facts to show that Heinman's conduct denied her

adequate procedural safeguards, and instead, only provides conclusory statements that her rights have been violated. See Doc. 1. While Banley's allegation that Heinman did not transfer jurisdiction pursuant to ICWA may constitute a violation of ICWA, Banley does not explain how this constitutes inadequate procedure, particularly when a state court proceeding where Banley was appointed counsel ensued. See id. at 11. Banley also alleges that her Fourteenth Amendment rights "were violated by [Heinman] when she did not follow ICWA, nor reach out to ICWA according to Federal Law, nor ensuring that [Banley's children], who were 'wards of the Tribal Court' prior to this case, were sent to the correct jurisdiction." Id. at 11. But here too, Banley does not explain how this denied her "a meaningful opportunity to present [her] case." Mathews v. Eldridge, 424 U.S. 319, 332-33 (1976).[16] Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This Court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Id.; see also Iqbal, 556 U.S at 678 (providing that a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement."). Therefore, Banley's Fourteenth Amendment procedural due process claim against Heinman is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### III. Fifth Amendment Claims

Banley alleges a Fifth Amendment claim against Bohle, Heinman, and Zens related to certain statements these defendants made, which Banley alleges were untruthful or caused Banley to "incriminate herself[]" during the pendency of her child custody proceedings. Doc. 1 at 10–11.

---

[16] While Banley alleges that she was denied a 48-hour hearing, see Doc. 1 at 10, 12, she does not allege that Heinman was involved in denying Banley this hearing, see id. at 10, 11, 12.

Liberally construing her complaint, Banley is alleging a violation of her Fifth Amendment right against self-incrimination.

The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. While the Supreme Court recognized that its "cases have permitted the Fifth Amendment's self-incrimination privilege to be asserted in noncriminal cases," it noted that the fact that the Fifth Amendment can be asserted in any proceeding "does not alter [the Court's] conclusion that a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." Chavez v. Martinez, 538 U.S. 760, 770 (2003) (citations omitted).

Here, it does not appear from Banley's complaint that her claims against Bohle, Hienman, and Zens arise out of any criminal case. See generally Doc. 1. Instead, her allegations relate to comments she made to Bohle, Heinman, and Zens during the pendency of her child custody proceedings.[17] Banley alleges that Bohle violated her Fifth Amendment rights "by twisting anything Christian or Pam told him[,]" and by making false statements about things Pam had told him. Id. at 11. Banley alleges that Heinman violated her Fifth Amendment rights by lying "to get Christian to slowly incriminate herself, until [Heinman] could actually gain custody of the girls." Id. Lastly, Banley alleges that Zens violated her Fifth Amendment rights "by not checking in on if caseworkers claims and allegations were true or not." Id. Because Banley does not allege that her statements were used against her in a criminal case, or that she was "placed under oath and

[17] While Banley's complaint does provide that there were abuse and neglect charges pending at one point, Doc. 1 at 10, 11, she does not allege that Bohle, Heinman, or Zens violated her Fifth Amendment rights during proceedings related to these charges. See id. at 10–11. While this Court liberally construes Banley's complaint, it is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Stone, 364 F.3d at 914.

exposed to the cruel trilemma of self-accusation, perjury or contempt[,]" Chavez, 538 F.3d at 767 (citation modified), she fails to state a cognizable claim under the Fifth Amendment. Therefore, Banley's Fifth Amendment claim against Bohle, Heinman, and Zens is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

#### f. Claims Against Judge Portra

Banley claims that Judge Portra violated her First Amendment rights by "using things from [her] past against her"; her Fourth Amendment rights "by allowing the illegal seizure and continued seizure of [Banley's] children from her knowing he was not in the jurisdiction to do so and the lack of evidence to prove they were in any danger"; her Fifth Amendment due process rights by failing to follow ICWA; her Sixth Amendment rights "by knowing that the court appointed counsel to the parents and children were not working directly for them, but for the state's best interests instead"; her Eighth Amendment rights by terminating her parental rights; her Fourteenth Amendment rights "by violating ICWA and claiming jurisdiction to a case he had none over"; and ICWA "by not following a single statute written in the law." Doc. 1 at 12.

A judge is generally entitled to absolute immunity from suit for acts undertaken in a judicial capacity. Penn v. United States, 335 F.3d 786, 789 (8th Cir. 2003). Judicial immunity, including immunity from suits brought under § 1983 to recover for alleged deprivation of civil rights, applies "in all but two narrow sets of circumstances." Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012). "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11–12 (1991) (internal citations omitted). Judicial acts are those normally performed by a judge and if

the complainant is dealing with the judge in her judicial capacity. Birch v. Mazander, 678 F.2d 754, 756 (8th Cir. 1982).

Judge Portra's actions were judicial in nature. Holding hearings in an abuse and neglect action, ruling on a petition to transfer, and issuing orders for foster care placement and termination of parental rights are all acts normally performed by a state judge. See also SDCL § 26-7A-1 *et seq.* (describing the judicial procedures for South Dakota's child custody proceedings and the application of ICWA). As for whether Judge Portra acted in in the complete absence of all jurisdiction, Banley alleges that she is "aware the Judge is protected by Qualified and Absolute immunity unless he is 'in the clear absence of all jurisdiction[,]" which she alleges she "can prove is true." Doc. 1 at 9. Based on the information alleged in the complaint, however, Judge Portra was not acting in the complete absence of all jurisdiction. See id. at 9, 12; see also Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012) (explaining that the Supreme Court has instructed courts "to construe broadly 'the scope of the judge's jurisdiction . . . where the issue is the immunity of a judge.'" (citation omitted)).[18] Therefore, Banley's individual capacity claims against Judge Portra are dismissed under 28 U.S.C. § 1915A(b)(1).[19]

---

[18] The Supreme Court provided the following example to clarify the difference between "lack of jurisdiction" and "excess of jurisdiction":

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Stump v. Sparkman, 435 U.S. 349, 357 n.7 (1978) (citing Bradley v. Fisher, 13 Wall. 335, 352 (1872)).

[19] Further, Banley's individual capacity claims for injunctive relief fail because Judge Portra does not have authority in his individual capacity to grant the relief that Banley requests. See supra at 21–22. See also Dyson v. Bartolomei, No. 25-CV-2296 (LMP/JFD), 2025 WL 3063336, at *7 (D. Minn. Nov. 3, 2025).

Judicial immunity, however, extends only to individual capacity claims. VanHorn v. Oelschlager, 502 F.3d 775, 777–79 (8th Cir. 2007). Because Banley sued Judge Portra in both his individual and official capacity, this Court must determine whether Banley's official capacity claims survive.

"[C]laims against state officials in their official capacities are really suits against the state[,] and a state is not a person for purposes of a claim for money damages under § 1983." Kruger v. Nebraska, 820 F.3d 295, 301 (8th Cir. 2016). "[E]ven though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." Edelman v. Jordan, 415 U.S. 651, 663 (1974). Eleventh Amendment immunity applies to suits against the judiciary of a state. See Denke v. S.D. Dep't of Soc. Servs., 829 F.2d 688, 689 (8th Cir. 1987) (recognizing the Eleventh Amendment bar suits "against the state or one of its agencies"). South Dakota circuit courts are part of South Dakota's government and immune from suit under the Eleventh Amendment since they are authorized by the South Dakota Constitution and created by the state legislature. S.D. Const. art. II ("The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this Constitution."); S.D. Const. art. V, § 1 ("The judicial power of the state is vested in a unified judicial system consisting of a Supreme Court, circuit courts of general jurisdiction and courts of limited original jurisdiction as established by the Legislature."); SDCL § 16-5-1.2 (establishing the seven judicial circuits). Accordingly, Judge Portra, as a circuit court judge acting in his official capacity, has Eleventh Amendment immunity.

In Ex parte Young, however, the Supreme Court recognized a narrow exception to sovereign immunity that allows plaintiffs to seek judicial orders in federal court to prevent state officials from enforcing state laws that are contrary to federal law. 209 U.S. 123, 159 (1908). The

doctrine of Ex parte Young "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, the state is no longer the real party in interest." Courthouse News Serv. v. Gilmer, 48 F.4th 908, 911 (8th Cir. 2022) (internal quotations omitted). In determining whether the doctrine of Ex parte Young applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (cleaned up and internal quotations omitted).

But the Ex parte Young exception "does not normally permit federal courts to issue injunctions against state-court judges or clerks. Usually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." Whole Woman's Health v. Jackson, 595 U.S. 30, 39 (2021). Looking to language from Ex parte Young stating that "'the right to enjoin . . . a state official . . . does not include the power to restrain a court from acting in any case brought before it' and that 'an injunction against a state court would be a violation of the whole scheme of our [g]overnment[,]'" the Eighth Circuit recognized that "Ex parte Young suggests a special rule applies to courts." Courthouse News, 48 F.4th at 912 (quoting Ex parte Young, 209 U.S. at 163). Therefore, the rule under Ex parte Young provides that "state sovereign immunity shields state-court judges and clerks from prospective relief that will interfere with their ability to 'act[ ] in any case.'" Id. (citing Ex parte Young, 209 U.S. at 163).

The Eighth Circuit, however, highlighted situations where the Ex parte Young rule against issuing injunctions against state court judges and clerks is inapplicable. Where a suit "is about enjoining named defendants from taking specified unlawful actions, not enjoining courts from proceeding in their own way to exercise jurisdiction," a suit more closely resembles "a classic Ex

parte Young suit brought against an executive official." Id. (citation modified). A suit may also resemble a classic Ex parte Young suit if the "traditional remedy" of appealing a decision is not available, or if the suit does not concern the merits of an underlying lawsuit. Id. at 912–13.

Here, however, Banley is asking this Court to void an issued state-court order that she alleges violates her constitutional rights and to compensate her for alleged harm. Doc. 1 at 14. Banley alleges that Judge Portra did not have jurisdiction to hear the case, and that "[t]here was no sufficient evidence to support the idea that [her children] were in grave danger if to be returned to [her]." Id. at 12. The traditional remedy for an allegedly erroneous state-court ruling is an appeal, "not the entry of an ex ante injunction preventing the state court from hearing cases." Whole Woman's Health, 595 U.S. at 39. Ultimately, the relief Banley requests as applied to Judge Portra is akin to the type of relief that seeks to "enjoin courts from proceeding in their own way to exercise jurisdiction," relief that is not available under Ex parte Young. 209 U.S. at 163. Therefore, the relief Banley requests does not surmount sovereign immunity under the Eleventh Amendment.

For the reasons stated above, Judge Portra is entitled to absolute immunity from individual capacity claims and entitled to Eleventh Amendment immunity from official capacity claims. Thus, Banley's § 1983 claims against Judge Portra are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

**g. Claims Against Karla Nelson**

Banley brings claims against Karla Nelson, the Brown County Deputy State's Attorney, alleging that Nelson violated her First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Doc. 1 at 4, 8, 11–12. Banley brings claims against Nelson in both her official and individual capacities and seeks both monetary and injunctive relief. Id. at 4, 14.

**i. Official Capacity Claims**

Beginning with the official capacity claims against Nelson, "[a] suit against a government officer in [her] official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, Banley's claim against Nelson in her official capacity as Brown County Deputy State's Attorney is, in effect, against Brown County, the governmental entity employing Nelson. Doc. 1 at 4.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Instead, a county "can only be held liable for the unconstitutional acts of its employees under § 1983 'when those acts implement or execute an unconstitutional policy or custom of the [political] subdivision.'" Marquez v. Peterson, No. 5:24-CV-05041-KES, 2025 WL 815208, at *4 (D.S.D. Mar. 13, 2025) (quoting Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999)); see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that the governmental "entity's official policy or custom must have caused the constitutional violation" in order for that entity to be liable under § 1983 (citation modified)).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)). "To trigger municipal liability based on unofficial municipal custom, the custom must be so

pervasive among non-policymaking employees of the municipality that it effectively has the force of law." Bolderson v. City of Wentzville, 840 F.3d 982, 986 (8th Cir. 2016) (citation omitted). A § 1983 complaint, however, does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Banley does not allege the existence of an unconstitutional policy or custom. She alleges that Nelson violated her rights in court during her abuse and neglect case. Doc. 1 at 11–12. While "[t]he Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the Iqbal standard in this context, . . . it has held that isolated incidents do not suffice and that allegations of 'many' incidents do establish liability." Ball-Bey v. Chandler, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (citations omitted). See also Quinn v. Doherty, 637 F. Supp. 3d 647, 667 (D. Minn. 2022) ("But Plaintiffs' specific allegations relate only to Plaintiffs' experience. This isolated event does not establish a custom."). Although Banley alleges that Nelson violated her First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, these violations all appear to stem from Nelson's conduct regarding a single situation—Banley's abuse and neglect case. See Doc. 1 at 11–12. Because Banley provides no facts suggesting the existence of "a continuing, widespread, persistent pattern of unconstitutional misconduct[,]" Brewington, 902 F.3d at 801 (citation omitted), she fails to allege the existence of a policy or custom. Therefore, Banley's claims against Nelson in her official capacity are

dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

**ii. Individual Capacity Claims**

Generally, prosecutors enjoy absolute immunity from damages liability for their work on legal cases. Jorgensen v. Union Cnty., No. 4:22-CV-04124-KES, 2023 WL 4868325, at *4 (D.S.D. July 31, 2023) (citing Burns v. Reed, 500 U.S. 478, 486 (1991)). "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976). Prosecutors enjoy absolute immunity while performing their prosecutorial duties "insofar as that conduct is 'intimately associated with the judicial phase of the criminal process[.]'" Burns, 500 U.S. at 486 (quoting Imbler, 424 U.S. at 430); see also Anderson v. Larson, 327 F.3d 762, 768 (8th Cir. 2003) (holding that absolute immunity shields prosecutors from liability for "prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process" (citations omitted)). Absolute immunity may not apply, however, when a prosecutor, instead of acting as "an officer of the court," is engaged in other tasks, such as "investigative or administrative tasks." Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009) (quoting Imbler, 424 U.S. at 431 n.33).

Other than Banley's conclusory statement that Nelson "conduct[ed] herself with investigative work including fabricating evidence[,]" she does not provide any facts demonstrating what investigative work Nelson conducted or what evidence she fabricated. See Doc. 1 at 8, 11–12; see also Iqbal, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,]" and a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." (citation modified)). On the

contrary, Banley's claims make clear that Nelson was acting within the scope of her prosecutorial functions. See Doc. 1 at 11–12 (referring to statements and arguments Nelson made in court, testimony presented in court, and Nelson's recommendations to the court). Therefore, Banley's claims against Nelson in her individual capacity for damages are dismissed without prejudice on the basis of prosecutorial immunity under 28 U.S.C. § 1915A(b)(1).

"[A]lthough prosecutors enjoy absolute prosecutorial immunity from damages liability in certain circumstances, absolute prosecutorial immunity does not extend to actions for declaratory and injunctive relief." Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs, 508 F.Supp.3d 486, 513 (D. Minn. 2020). But Banley's individual capacity claims against Nelson for injunctive relief also fail. Banley seeks injunctive relief requesting that custody of her children be transferred from DSS to their grandparents. Doc. 1 at 14. Therefore, the injunctive relief Banley requests concerns authority Nelson has only in her official capacity. See Bird v. Mertens-Jones, No. 4:21-CV-04197-KES, 2023 WL 1785572, at *8 (D.S.D. Feb. 6, 2023). "Thus, 'the only relief [Banley] can obtain from [Nelson] in [her] individual capacit[y] is damages[,]' and not injunctive relief." Id. (quoting Hummel v. Minn. Dep't of Agric., 430 F. Supp. 3d 581, 593 (D. Minn. 2020)); see also Moore v. Houwman, No. 4:25-CV-04026-KES, 2025 WL 2606120, at *8 (D.S.D. Sep. 9, 2025) (dismissing individual capacity claims for injunctive relief against county state's attorneys at the screening stage). Therefore, Banley's requests for injunctive relief against Nelson in her individual capacity are dismissed without prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915A(b)(1).

**h. Claims Against Christy Griffin-Serr**

Banley alleges that Griffin-Serr violated Joshua, L.B., and J.J.'s Fifth, Sixth, Eighth, and Fourteenth Amendment rights, and brings claims against Griffin-Serr in her individual and official

capacities. Doc. 1 at 5, 13–14. But Banley does not allege that Griffin-Serr violated *her* rights. Id. at 13–14. Instead, she only brings claims on behalf of Joshua and her two daughters. Id. As discussed above, a pro se plaintiff may plead their own cases in federal court, but a pro se plaintiff cannot bring claims on behalf of others. See supra at 10–11. The Eighth Circuit has held that "[n]on-attorney parents cannot litigate pro se on behalf of their minor children, even if the minors cannot bring the claim themselves." Crozier for A.C. v. Westside Cmty. Sch. Dist., 973 F.3d 882, 887 (8th Cir. 2020) (citing Myers v. Loudoun Cnty. Pub. Schs., 418 F.3d 395, 401 (4th Cir. 2005)). Because the only claims Banley brings against Griffin-Serr are claims she is attempting to bring on behalf of others, Banley's claims against Griffin-Serr, in her individual and official capacities, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

**i. Claims Against the Estate of Dana Hanna**

Banley names the Estate of Dana Hanna as a defendant. Doc. 1 at 5. Banley alleges that Hanna was "the attorney for the Cheyenne River Sioux Tribe's jurisdiction[,]" and brings both individual and official capacity claims. Id. But Banley's only allegations against Hanna are that he violated ICWA, and it is not clear what other claims, if any, she intended to bring against him. See generally Doc. 1. Therefore, to the extent that Banley intended to allege any other claims against Hanna, these claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). See Stone, 364 F.3d at 914 (providing that although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced.").

## II. Remaining Motions

Banley's motion for leave to proceed in forma pauperis, Doc. 2, is denied as moot as Banley paid the filing fee. Banley also filed a motion to appoint counsel. Doc. 3. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present her claims. Id. At this time, Banley's claims do not appear to be complex, and she is able to investigate the facts and present her claims adequately. This Court believes that Banley is capable of pursuing her claims pro se at this phase of litigation, and her motion to appoint counsel, Doc. 3, is denied at this time.

Lastly, Banley filed a motion for status conference and request for procedural direction.[20] Doc. 9. But the defendants have not yet been served nor filed an answer. Therefore, Banley's motion for a status conference, Doc. 9, is denied without prejudice as premature.

## III. Service and Notice of Rule 4(m)

Because Banley paid the full filing fee and was not granted leave to proceed in forma pauperis, she is not automatically entitled to service by the United States Marshals Service. See Fed. R. Civ. P. 4(c)(3) ("At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The

---

[20] In this motion, Banley "requests guidance from this Court regarding the appropriate procedural path forward." Doc. 9 at 3. This Court cannot provide legal advice to Banley. See Graham v. Reishus, No. 23-CV-0263 (JWB/DLM), 2023 WL 3984757, at *2 (D. Minn. June 13, 2023) (providing that courts "cannot provide legal advice to parties, including a *pro se* party[.]" (citation omitted)); Stills v. Simpson, No. 4:20-CV-1099 PLC, 2021 WL 694926, at *2 (E.D. Mo. Feb. 23, 2021) ("The Court cannot provide legal advice to a self-represented litigant.") (collecting cases)). This decision provides guidance of what claims survive screening and what law is applicable to those claims.

court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916."). However, the Clerk of Court is directed to send five blank summons forms to Banley so that she may arrange her own service of process on DSS, Bohle, Heinman, Zens, and Portra.

Federal Rule of Civil Procedure 4(m) states in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Banley is on notice of this Court's intention to dismiss her claims without prejudice if she does not serve the defendants by **ninety days from the date of this Court's screening order,** pursuant to Rule 4(m), unless she can show good cause for her failure to serve defendants.

## IV. Conclusion

Accordingly, it is

ORDERED that any claims Banley attempted to assert on behalf of her children, her parents, or Joshua are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. It is further

ORDERED that Banley's ICWA claims for money damages are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's ICWA claims for declaratory relief against Nelson, Dohrer, Griffin-Serr, and Hanna are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's ICWA claims for declaratory relief against the Aberdeen Police Department and CHS are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's ICWA claims for declaratory relief against DSS under 25 U.S.C. §§ 1911(a), 1912(d), 1912(e), 1912(f), and 1914; against Bohle under §§ 1912(d) and 1914; against Heinman under §§ 1911(a) and 1914; against Zens under §§ 1911(a), 1912(d), and 1914; and against Portra under §§ 1911(a), 1912(e), 1912(f), and 1914 survive initial screening under 28 U.S.C. § 1915A, though Younger abstention or the Rooker-Feldman doctrine may ultimately apply. It is further

ORDERED that Banley's § 1983 claims against DSS are barred by the Eleventh Amendment and dismissed under 28 U.S.C. § 1915A(b)(1)–(2). It is further

ORDERED that Banley's § 1983 claims against CHS are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's § 1983 claims against Dohrer are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's claims against the Aberdeen Police Department are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). To the extent that Banley intended to bring claims against individual officers, these claims are also dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's claims against Bohle, Heinman, and Zens in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915A(b)(2). It is further

ORDERED that Banley's requests for injunctive relief against Bohle, Heinman, and Zens in their individual capacities are dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's Fourteenth Amendment substantive due process claims against Bohle and Heinman, in their individual capacities for monetary relief and official capacities for injunctive relief, survive § 1915A screening. It is further

ORDERED that Banley's Fourteenth Amendment substantive due process claim against Zens, in her individual capacity for monetary relief and official capacity for injunctive relief, survives § 1915A screening. It is further

ORDERED that Banley's Fourteenth Amendment procedural due process claim against Heinman, in her individual capacity for monetary relief and official capacity for injunctive relief, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's Fifth Amendment claim against Bohle, Heinman, and Zens, in their individual capacities for monetary relief and official capacities for injunctive relief, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's § 1983 claims against Judge Portra, in his individual and official capacities, are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's § 1983 claims against Nelson in her official and individual capacities, for both injunctive and monetary relief, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's § 1983 claims against Griffin-Serr, in her individual and official capacities, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that any § 1983 claims Banley intended to allege against the Estate of Dana Hanna are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Banley's motion for leave to proceed in forma pauperis, Doc. 2, is denied as moot. It is further

ORDERED that Banley's motion to appoint counsel, Doc. 3, is denied at this time. It is further

ORDERED that Banley's motion for a status conference, Doc. 9, is denied without prejudice. It is further

ORDERED that the Clerk of Court shall send five blank summons forms to Banley so that she may arrange her own service of process on the remaining defendants, DSS, Bohle, Heinman, Zens, and Portra. It is further

ORDERED that Banley is on notice of this Court's intention to dismiss her claims without prejudice if she does not serve the defendants by **ninety days from this order**, pursuant to Rule 4(m), unless she can show good cause for her failure to serve the defendants. It is finally

ORDERED that Banley will keep the Court informed of her current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED September 18th, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE